Andrews, J.
By chapter 9 of the Laws of 1872, the comptroller, the commissioner of public works and the president of the department of public parks of the city of Hew York were constituted a board of apportionment and audit, with certain defined powers, among which is the power to audit and allow unpaid claims against the city of the description specified in the act. The second section requires that the meetings of the board shall be public and upon notice, and that claims presented to the board (except for salaries and wages) shall be read by the clerk at the time of presentation, and shall lie on the table for five days thereafter “for objections; ” and all objections made within that time “ shall be duly considered ” by the board, and it is prohibited from auditing or allowing any claim at a greater rate or amount than that fixed by law or by the contract under which it originated.
By chapter 375 of the Laws of 1872, the act was amended so as to include in the claims which might be submitted to the board claims for printing done prior to that year.
*227 It is manifest that the functions and powers of the board of audit in respect- to claims against the city are judicial in their nature.
The statute was designed to secure the fullest publicity to the proceedings, and the board was bound to consider all objections which might be made to any claim presented, and no claim could be audited or allowed without the concurrence of all the members.
To audit a claim ex vi ternvmi imports the exercise of judgment; and a claimant proceeding under this statute, and invoking in his behalf the exercise of the power conferred on the board of audit, was bound to submit to the jurisdiction, as defined by the statute, and could not demand that the board should allow his claim without passing upon his right to payment.
The relator presented her claim for allowance only, and she insists that the city is concluded from contesting its validity or amount by the previous action of the auditing bureau and the comptroller.
. This view, if well founded, might aid the relator in an action against the city, but in pursuing the remedy given by the act of 1872, she was bound to submit the question of the liability of the city for the demand to the judgment of the board of audit. This she did not do; and as her request to the board was confined to an allowance of the claim as a fixed liability, thereby limiting the action of the board to a mere certification of the claim as adjusted by the prior action of the finance department, the mandamus against it was properly refused. (3 Stephens’ ISTisi Prius, 2292; Moses on Mandamus, 18.)
Somewhat different considerations apply to the question of the right of the relator to a mandamus against the comptroller.
It has no support in the act of 1872. The comptroller is by that act authorized or required to pay or provide for the payment of such claims “ as shall be audited and allowed ” by the board of apportionment and audit.
*228 The relator’s claim has not been audited by that board, and no duty to pay the claim was, by that act, imposed upon the comptroller.
It is claimed, however, that a mandamus should have been awarded on the ground that the claim of the relator was audited and allowed under the provisions of section 37 of chapter 137 of the Laws of 1870.
That section provides that in the finance department óf the city “there shall be an auditing bureau, which shall audit, revise and settle all accounts ” against the city, and that the sums "allowed upon each account shall be certified by the bureau to the comptroller, with the reasons for the allowance.
The account of the relator was audited and allowed pursuant to this section, at the sum of $27,375, April 25, 1870.
But no statute has been referred to enjoining the comptroller to pay accounts thus audited, and we have found none, unless the direction contained in section 11 of chapter 382, passed April 26, 1870, applies.
This section directs that the comptroller shall “ adjust and pay” outstanding claims for printing, advertising, etc., and that “ such adjustment be made within sixty days from the passage of the act.” And by this act and the act of 1868, to which it refers, authority is given to the comptroller to borrow money to pay the claims adjusted under it.
The claim of the relator was not adjusted under the act of 1870. The action of the finance department and of the comptroller upon it occurred before that act was passed.
The act of 1872 authorizes the adjustment and payment, through the machinery provided by it, of the claim of the relator. ,
It requires the comptroller to pay the claims audited by the board constituted under the act, and authorizes him to borrow money for that purpose.
And by the second section of the amended act (chap. 375), it is provided that revenue bonds, in addition to those pre *229 viously authorized, may be issued “ to meet the liabilities of the city and county for advertising.”
• We think that the scheme of auditing and adjusting claims of the character of the relator’s, provided in the act of 1872, superseded that contained in the act of 1870, and that the latter act was, pro icmto, repealed by the subsequent one.
This disposes of the claim of the relator against the comptroller.
The orders appealed from are affirmed, with costs.
All concur.
Orders affirmed.